# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ROBERT VINSON BRANNUM     )
     )
    Plaintiff,    )
     )
     )    **Civil Action No. 03-1748 (RCL)**
    v.    )
     )
     )
MICHAEL L. DOMINGUEZ[1]    )
Acting Secretary of the Air Force    )
     )
    Defendant.    )
     )

## MEMORANDUM OPINION

This matter comes before the Court on defendant's motion for leave to file a renewed motion for summary judgment, defendant's renewed motion for summary judgment, and plaintiff's response to these motions.  Also before the Court are plaintiff Brannum's cross-motions for summary judgment.  Upon consideration of the filings, the entire record herein and the relevant law, the Court will grant defendant leave to file a renewed motion for summary judgment, and will grant defendant's renewed motion for summary judgment and deny plaintiff's cross-motions for summary judgment.

## I.     Procedural Posture

This case originated when plaintiff Brannum filed a request with defendant, Secretary of the Department of the Air Force on November 20, 2002 under the Freedom of Information Act ("FOIA") and the Privacy Act seeking "...copies of all papers, documents, reports and materials, to include but not limited to cover and or [sic] transmittal notes, sheets, letters or memoranda

---

[1] Substituted pursuant to Rule 25(d), Fed.R.Civ.P.

forwarded to and or used by...the SAF Personnel Council or any other person, persons, office, agency, bureau, department, committee, council, or entity of the US Air Force to determine [plaintiff's] highest grade [in the Air Force] for retirement. (See Plaintiff's Complaint ("Compl.") Attach. 1.)  Dissatisfied with the Air Force's response, plaintiff filed the instant suit on August 18, 2003.  Following numerous motions for an extension of time to file a dispositive motion by defendant, (See Defendant's ("Def.'s) Motions from April 30, 2004; May 14, 2004; May 28, 2004) which were granted by this Court (See Court's Orders from May 5, 2004 and June 1, 2004), defendant filed a motion to dismiss or in the alternative, a motion for summary judgment on June 2, 2004 (See Def.'s Motion from June 2, 2004.)  Plaintiff responded with a memorandum in opposition on June 30, 2004. (See Plaintiff's ("Pl.'s") June 30, 2004 Memorandum ("Mem.").)

    Plaintiff's memorandum was followed by three consecutive motions on the part of defendant for an extension of time in which to file a reply to plaintiff's June 30, 2004 memorandum.  Each of these motions was again granted by this Court but no reply was ever filed by defendant.  On November 18, 2004, this Court denied defendant's motion for summary judgment or motion to dismiss, and required defendant to submit a Vaughn index by December 10, 2004 followed by a dispositive motion, which was due on December 20, 2004. (See Court's Order from November 18, 2004.)  Defendant filed a belated Vaughn index on December 13, 2004 (Def.'s December 13, 2004 Notice of Filing Vaughn Index), and as a result, plaintiff filed a cross-motion for summary judgment (See Pl.'s Mot. from December 13, 2004).  This Court denied plaintiff's cross-motion for summary judgment. (See Court's Order from December 13, 2004.)  Plaintiff then subsequently filed another cross-motion for summary judgment. (See Pl.'s

December 13, 2004 Mot.)

On January 10, 2005, nearly one month after defendant's dispositive motion was due, defendant filed a motion for leave to file renewed motion for summary judgment along with defendant's renewed motion for summary judgment and memorandum in support of defendant's renewed motion for summary judgment. (Def.'s Motions and Memorandum from January 10, 2005.)  These motions were subsequently followed by plaintiff's memorandum in opposition, (Pl.'s Mem. from January 13, 2005), and yet another cross-motion for summary judgment by plaintiff.

## II.  Background

Plaintiff is Robert Vinson Branson, a legal resident of the District of Columbia. (Compl. ¶ 3.)  Defendant is Michael L. Dominguez, Acting Secretary of the Department of the Air Force. (Id.)  On November 20, 2002, plaintiff filed a request with defendant under the FOIA and the Privacy Act requesting records and documents pertaining to the determination of plaintiff's highest grade for retirement. (Compl. ¶ 5.)  In letters dated February 4, 2003 and March 17, 2003, defendant provided plaintiff with interim responses to plaintiff's requests for information in which defendant stated that additional time would be needed to process the request. (Def.'s June 2, 2004 Mot. Ex. B.)

On August 19, 2003, Mr. John M. Espinal, the FOIA Manager at the Department of the Air Force, responded to defendant's request.  (Def.'s June 2, 2004 Mot. Ex. C.)  Mr. Espinal noted in his letter that defendant's request for documents was only processed under the Freedom of Information Act, and not under the Privacy Act, since the records were not retrievable by name or other identifier, and therefore the records were not in a "system of records" as defined by the

3

Privacy Act.  (<u>Id.</u>; Def.'s January 10, 2005 Mem. at 2.)  Mr. Espinal's office did release

information requested pursuant to the FOIA with certain redactions. (Def.'s January 10, 2005

Mem. at 2-3.)

Information withheld included names and personal signatures on Vote Sheets under

Exemption 6 and "remarks" and "board rationale" under Exemption 5 of the FOIA. (<u>Id.</u> at 3-12.)

Also withheld was the first paragraph of the "Recommendation for Involuntary Reassignment

from 4 SVS/CC" pursuant to Exemption 5 of the FOIA.  (<u>Id.</u> at 6.)  Mr. Espinal attested to this

information in an October 29, 2003 executed declaration. (Def.'s June 2, 2004 Mot. Ex. D.)  The

same information is also contained in the index filed by defendant on December 13, 2004

pursuant to <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973).  (<u>See</u> Def.'s December 13, 2004

Notice of Filing <u>Vaughn</u> Index.)

**III. Defendant's Motion for Leave to File Renewed Motion for Summary Judgment.**

On January 10, 2005 defendant filed a motion for leave to file a renewed motion for

summary judgment.  (Def.'s Mot. from January 10, 2005.)  This dispositive motion was due on

December 20, 2004, and was therefore nearly one month late. (<u>See</u> Court's Order from

November 18, 2004.)  This was not the first instance in which counsel for defendant was late in

filing a motion, and in each of the preceding instances, this Court has been exceedingly

accommodating to defendant's motions for extensions of time in which to file.  The conduct of

counsel for defendant has been less than what is expected of those practicing before this Court,

and counsel was already aware of this Court's displeasure. (<u>See id.</u>)  Nevertheless, the judicial

system has a strong presumption of adjudication on the merits.  <u>See</u> <u>Shepard v. Am. Broad. Cos.</u>,

62 F.3d 1469, 1475 (D.C. Cir. 1995).  The mere fact that this Court found it necessary both in

this instance and at least in one prior occurrence in this case to criticize the conduct of this litigation by the U.S. Attorney's office should be sufficient to deter such future conduct. Accordingly, this Court will proceed in deciding the instant case solely on the merits.

## IV. Analysis

### A. Defendant's Renewed Motion for Summary Judgment.

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). As with Rule 12(b)(6) motions for dismissal, facts and inferences drawn from those facts must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment may still be granted, however, if evidence favoring the non-moving party is merely colorable, or is not significantly probative. Anderson, 477 U.S. at 249-50 (citations omitted). Once the moving party files a proper summary judgment motion, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250. For a non-moving party to establish a genuine issue for trial exists, it must do more than simply show there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### 1. Standard for Summary Judgment in FOIA Actions

For an agency to prevail on a motion for summary judgment in a FOIA action, it must prove that no genuine issue of material fact exists, viewing the facts in the light most favorable to

the requester. <u>Weisberg v. U.S. Department of Justice</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The agency must demonstrate that "it has conducted a search reasonably calculated to uncover all relevant documents" to satisfy this burden. <u>Id.</u> at 1485 (citations omitted).  Whether or not the agency's search is reasonably calculated depends on the adequacy of the search, not on the results, and the adequacy of an agency's search is determined on a case-by-case basis, guided by a standard of reasonableness. <u>Id.</u>  As this Court has previously noted, reiterating the deemphasis on results, "in assessing the reasonableness of a search, a court is not guided by whether the search actually uncovered every document or whether the search was exhaustive." <u>Ferranti v. Bureau of Alcohol, Tobacco & Firearms</u>, 177 F. Supp. 2d 41, 46 (D.D.C. 2001) (Lamberth, J.). In order to prove this adequacy threshold has been met, the agency may rely upon "reasonably detailed nonconclusory affidavits submitted in good faith." <u>Id.</u>

**2. Reasonableness and Adequacy of Defendant's Search**

In providing the requested documents pursuant to plaintiff's request, defendant argues that his search was adequate. (<u>See</u> Def.'s January 10, 2005 Mem. at 1.)  The search conducted by defendant has been described in the Declaration of John M. Espinal.  Espinal is employed as the Freedom of Information Act Manager, 11th Communications Squadron, Washington, DC, whose office is responsible for processing FOIA requests received by the Office of the Secretary of the Air Force.  (Def.'s June 2, 2004 Mot. Ex. D.)  Upon receiving plaintiff's request for information, Espinal's office "requested the appropriate offices to search for and review records responsive to [plaintiff's] request." (<u>Id.</u>)  While awaiting responses from these offices, Espinal remained in contact with plaintiff, notifying plaintiff that his request was being processed as "quickly as possible, and thanking him for his patience." (<u>Id.</u>)  Upon receiving the responsive documents

through the Assistant Secretary of the Air Force for Manpower and Reserve Affairs, the redacted documents were released to plaintiff on August 19, 2003. (Id.)

      In his response to defendant's motion to dismiss and his recent response to defendant's motion for leave and renewed motion for summary judgment, plaintiff argues that the search performed by defendant was not sufficient.  (See Pl.'s June 30, 2004 Mem.; Pl.'s January 13, 2005 Mem.)  In arguing the applicability of the Privacy Act, which this Court addresses below, plaintiff contends that "none of Defendant's papers [provided to plaintiff] list the documents, statements or any other materials used to determine the highest rank held." (Pl.'s June 20, 2004 Mem. at 4.)  Plaintiff further contends that he has not received any "requested documents and records in whole or with appropriate redactions." (Pl.'s June 13, 2004 Mem. at 1.)  These statements, however, are contradicted by the actual documents which were provided by defendant, as well as by the Vaughn index produced.   As noted in defendant's Vaughn index, the documents provided to plaintiff include an AFPB Vote Sheet, as well as a Memorandum for 4 FW/JA.  (Def.'s December 13, 2004 Notice of Filing Vaughn Index.)  Furthermore, defendant maintains that "no documents were withheld in full." (Id.)  In total, seven (7) documents were produced by defendant, of which three contained redactions. (Id.)  Although plaintiff has stated otherwise, a number of these documents do address the subject of plaintiff's highest grade satisfactorily held. (See Def.'s Vaughn Index from December 13, 2004, Attach. 1, 2, 4, 7).  To assert that plaintiff has not received any of the "requested documents and records in whole or with appropriate redactions" would directly contradict the record and the documents produced by defendant, as four of the documents produced contained no redactions, while directly addressing the issue of plaintiff's highest grade satisfactorily held. (See Def.'s Vaughn Index from

7

December 13, 2004, Attach. 3, 4, 5, 6).

In light of the documents produced, and the supporting declarations, it is clear that the Air Force satisfied its obligation under the FOIA to provide an adequate and reasonable search.  The agency was required under the FOIA to make "a good faith effort to conduct a search for the requested records, using methods reasonably expected to produce the information requested." Oglesby v. U.S. Dep't. of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  In his declaration, the FOIA Manager for defendant declared that the search for plaintiff's documents included requesting the appropriate offices to "search for and review records responsive to [plaintiff's] request, [and that] all of the responsive documents [were released] to [plaintiff] on August 19, 2003."  (Def.'s June 2, 2004 Mot. Ex. D)  This declaration and the documents produced by defendant indicate that defendant has complied in good faith with the requirements of the FOIA to provide an adequate and reasonable search.

Plaintiff also contends in his complaint that "the Department of the Air Force has failed to comply with the Plaintiff's request within the FOIA time limits." (Compl. ¶ 6).  However, "[a] lack of timeliness does not preclude summary judgment for an agency in a FOIA case. The only question for summary judgment is whether its withholdings are justified." Hornbostel v. U.S. Dept. of Interior, 305 F. Supp. 2d 21, (D.D.C. 2003) (Lamberth, J.). *See, e.g.*, Atkins v. Dep't of Justice, 1991 WL 185084 (D.C. Cir. Sept. 18, 1991)(unpub.) ("The question whether DEA complied with the Freedom of Information Act's (FOIA) time limitations in responding to Aaron Atkins' request is moot because DEA has now responded to this motion."); Tijerina v. Walters, 821 F.2d 789, 799 (D.C. Cir. 1987) ("'[H]owever fitful or delayed the release of information under FOIA may be...if we are convinced appellees have, however belatedly, released all

nonexempt material, we have no further judicial function to perform under the FOIA.'") (quoting

Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982)). Landmark Legal Foundation v. E.P.A., 272

F. Supp. 2d 59, 62-63 (D.D.C. 2003).  The Department of the Air Force provided interim reports

of the progress of the search to defendant (Def.'s June 2, 2004 Mot. Ex. A, B), and expedited

plaintiff's request, despite being late.   This Court concludes that the search conducted by

defendant was reasonable and, as such, defendant's lack of timeliness will not preclude summary

judgment in his favor.

**B. Relevancy of the Privacy Act**

Plaintiff has also contended that defendant wrongfully withheld records under the Privacy

Act of 1974, 5. U.S.C. 552a. (Compl. ¶ 7; Pl.'s June 30, 2004 Memorandum at 3.)  In citing an

"Application for Correction of Military Record" form (DD Form 149) as well as an "Air Force

Instruction 36-2603"  produced by defendant, plaintiff asserts that a system of records is

maintained by defendant, since these forms request the applicant to provide identifying

information such as a Social Security number. (Pl.'s January 13, 2005 Mem. at 1.)  Defendant,

however, maintains that the Privacy Act is not applicable in this case since the requested

documents are not contained in a system of records.[2] (Def.'s January 10, 2005 Mem. at 2.)  "[I]t

is not sufficient that an agency has the capability to retrieve information indexed under a person's

name, but the agency must in fact retrieve records in this way in order for a system of records to

exist." Henke v. United States Department of Commerce, 83 F.3d 1453, 1460 n.12 (D.C. Cir.

---

[2] The Privacy Act defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

9

1996).  However, "an agency's failure to acknowledge that it maintains a system of records will not protect the agency from statutory consequences if there is evidence that the agency in practice retrieves information about individuals by their names or personal identifiers." Chang v. Department of Navy, 314 F. Supp. 2d 35, 41 (D.D.C. 2004).  In this case, even though these particular documents requested by plaintiff may contain identifiers such as a Social Security number, they are not readily retrievable by such identifiers. (See Def.'s January 10, 2005 Mem. at 2.) As such, defendant correctly determined that the Privacy Act was not applicable to the records in this particular case, and instead processed the requests under the FOIA, in which seven documents were made available to plaintiff.

**C. Defendant's Invocation of FOIA Exemptions 5 and 6.**

While the primary objective of the FOIA is to allow the public to obtain access to federal agency records, "Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information, and therefore provided the specific Exemptions under which disclosure could be refused." John Doe Agency v. John Doe Corp., 493 U.S. 146 (1989) (citations omitted).  However, as disclosure remains the purpose of the Act, the Exemptions must be narrowly construed and the burden of demonstrating that these strictly defined Exemptions apply to a particular case rests with the agency. Id. at 152.  An agency may satisfy its burden "by providing the requester with a Vaughn index, adequately describing each withheld document and explaining the Exemption's relevance." Gutman v. U.S. Department of Justice, 238 F. Supp. 2d 284, 290 (D.D.C. 2003) (Urbina, J.) (citations omitted).

Defendant invoked the FOIA Exemptions 5 and 6 to justify redacting three of the seven documents produced as a result of his search.  Defendant argues that it has supplied a Vaughn

10

Index naming all of the redacted documents, and justified his decision to redact each by

explaining which Exemption covers each document.  Plaintiff agues against defendant's use of

each Exemption, contending that the exemptions do no apply in this case.

**1. Defendant's Invocation of Exemption 5**

Exemption 5 protects disclosure of "inter-agency or intra-agency memorandums or letters

which would not be available by law to a party other than an agency in litigation with the

agency." 5 U.S.C. § 552(b)(5).  Agencies invoking Exemption 5 most frequently rely upon the

deliberative process privilege, the purpose of which "is to prevent injury to the quality of agency

decisions" by allowing "the withholding of all papers which reflect the agency's group thinking

in the process of working out its policy and determining which its law shall be." NLRB v. Sears,

Roebuck & Co., 421 U.S. 132, 153 (1975).  Specifically, documents "reflecting advisory

opinions, recommendations and deliberations comprising part of a process by which

governmental decisions and policies are formulated" are protected by this privilege. Id. at 150.

Allowing such an exemption ultimately preserves the free flowing debate essential to an agency's

decision-making process.

In applying the deliberative process privilege under Exemption 5, the documents to be

withheld or redacted must be pre-decisional and deliberative.  See Mapother v. Dep't of Justice, 3

F.3d 1533, 1537 (D.C. Cir. 1993).  For a communication or document "between subordinates and

superiors" to be pre-decisional, they must be "actually Antecedent to the adoption of an agency

policy." Jordan v. United States Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978).   For a

communication or document to be deliberative, it must be "a direct part of the deliberative

process in that it makes recommendations or expresses opinions on legal or policy matter."

Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).  Defendant contends that each of the

redactions are both pre-decisional and decisional, and as such, fall within Exemption 5.  This Court agrees.

According to the <u>Vaughn</u> index submitted by defendant, "remarks" and "board rationale" contained on documents 1 and 2 entitled "AFPB Vote Sheet" were withheld because they "consist of factual information which the Board members considered relevant and pertinent in arriving at their recommendation....Release of this information would thwart the free and open exchange of ideas in the decision making process." (Def.'s December 13, 2004 Notice of Filing <u>Vaughn</u> Index at 2.)  Furthermore, the first paragraph of document 7 ("Recommendation for Involuntary Reassignment") was also withheld, since this information "includes the rationale which lead the commander to reach the subject recommendation.  The information reveals the commander's deliberative process." (<u>Id.</u> at 3.)  In order to determine the applicability of the Exemptions, it is important to first identify the methods and procedures in which these particular documents are used by the Air Force.

According to filings in this case, as well as previous suits filed by plaintiff,[3] plaintiff served in the United States Air Force Reserve, and received notice from the Secretary of the Air Force Council in 2002 regarding his highest grade satisfactorily served in the Air Force. (Compl. Attach. 3.)  This notice apparently arrived after plaintiff applied for a transfer to retired status in the Air Force in 2001. (Def.'s January 10, 2005 Mem. at 8.)  When processing a retirement request, the "United States Air Force, through the Secretary of the Air Force Personnel Council, must determine the highest grade in which the member satisfactorily served." (<u>Id.</u>; <u>See</u> <u>also</u> Def.'s June 2, 2004 Mot. Ex. E.)

According to Department of the Air Force instructions, only the "[Secretary of the Air

---

[3] <u>See</u>, <u>e.g.</u>, <u>Brannum v. Lake</u>, 311 F.3d 1127 (D.C. Cir. 2002), <u>Brannum v. Lake</u>, Civ. No. 00 - 1461 (RCL), <u>Brannum v. Jumper</u>, Civ. No. 01-0137 (RCL).

Force] or designee...has the authority to approve or disapprove applications for transfer or assignment to the Retired Reserve..." (Def.'s June 2, 2004 Mot. Ex. E at 116.)  Furthermore, "[a] determination of highest grade held ("HGH") satisfactorily is required on all members who apply for transfer to the Retired Reserve." (Id. at 117.)   The Secretary of the Air Force has delegated the authority to make this determination to the Director of Personnel for the Air Reserve Personnel Center ("HQ ARPC/DP"). (Id.)  In making the determination of plaintiff's highest grade satisfactorily held, the HQ ARPC/DP relies on information and recommendations from others, though the final decision is left to the HQ ARPC/DP. (See Def.'s January 10, 2005 Mem. at 8.)  One of the recommendations came from plaintiff's commander, and is contained in paragraph 1 of document 7 of the Vaughn index supplied by defendant.  Information contained in this paragraph has been correctly redacted under Exemption 5.

Information such as the AFPB Vote Sheets and the "Recommendation for Involuntary Reassignment" of plaintiff's commander are clearly pre-decisional.  Simply because the commander lacked decision making authority, and the document is merely a recommendation does not exclude the document from Exemption 5.  See Renegotiation Bd. V. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 188 (1975).  Such information is precisely the type of pre-decisional documents intended to fall under Exemption 5. See id. at 184-85; See also Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980).  "[A] document from a subordinate to a superior official is more likely to be predecisional." Coastal States, 617 F.2d at 868.  The information here flowed from the lower ranking officials to the decision making authority, here the Director of Personnel for the Air Reserve Personnel Center. As such, Exemption 5 was properly invoked.

**1. Defendant's Invocation of Exemption 6**

Exemption 6 protects disclosure under the FOIA of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C § 552(b)(6).  In order for Exemption 6 to be properly invoked for a communication or document, an agency must prove "first that they are 'personnel and medical files and similar files,' and second that their disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'" Judicial Watch, Inc. v. Export-Import Bank, 108 F. Supp. 2d 19, 36 (D.D.C. 2000) (Lamberth, J.) (quoting Dep't of State v. Washington Post Co., 456 U.S. 595, 599-603 (1982)).  This Court further noted that

> the first criterion of Exemption 6 is met if the information "appl[ies] to a particular individual" and is "personal" in nature. New York Times Co. v. NASA, 852 F.2d 602, 606 (D.C. Cir.1988).  Further, the information need not be contained in a "personnel" file. Washington Post Co., 456 U.S. at 601.  The second step of an Exemption 6 analysis is to strike a "balance between the protection of an individual's right to privacy and the preservation of the public's right to government information." Id. at 599. The "public interest" in the analysis is limited to the "core purpose" for which Congress enacted the FOIA: to "shed ... light on an agency's performance of its statutory duties." U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).

Judicial Watch, Inc., 108 F. Supp. 2d at 36-37.

Defendant has applied Exemption 6 to documents 1 and 2 in the Vaughn index provided. (See Def.'s December 13, 2004 Notice of Filing Vaughn Index.)  This exemption was used to withhold the names and personal signatures on the Air Force Personnel Board vote sheets of those individuals who administered the grade determination process  in order to "protect the privacy interests those individuals have in their signatures." (Id.)  Plaintiff contends that this information should not fall under Exemption 6 because the information withheld is "not a personnel, medical or similar file,...[information about] who holds a particular office at a particular time is a matter of public record, [and]...the documents from which the names are redacted do not disclose personal

14

information about the action officers." (Pl.'s June 30, 2004 Mem. at 3.)  This Court disagrees.  The

names and signatures of these individuals are "personal" in nature to which a privacy interest does

exist.  As a result, this court must balance this privacy interest with the public interest in disclosing

this information.  This court agrees with defendant that "[r]elease [of this information]

would...create opportunity for misappropriation of the signatures and make participants less likely to

voluntarily participate in the process." (Def.'s January 10, 2005 Mot. at 12.)  The public interest

involved in the disclosure of this information would  most likely not shed any light on the AFPC's

performance.  Thus, the balance is in favor of the protection of the privacy of the individuals and, as

such, this Court finds Exemption 6 was properly applied by defendant to these documents.

**V. Conclusion**

      Defendant has satisfied his burden of demonstrating his search conducted in response to

plaintiff's FOIA requests was reasonably conducted and thus adequate.  Furthermore, defendant was

justified in only processing the request under the FOIA, as the Privacy Act was not applicable in this

particular case.  Defendant has also satisfied his burden of proving appropriate use of the FOIA

Exemptions 5 and 6.  Plaintiff's arguments raised in opposition to defendant's motion do not

preclude defendant's motion for summary judgment.  As such, this Court will grant defendant leave

to file a renewed motion for summary judgment.  Furthermore, this Court will grant defendant's

renewed motion for summary judgement and will deny plaintiff's cross-motions for summary

judgment.

      A separate Order shall issue this date dismissing this case with prejudice.

      Signed by Royce C. Lamberth, United States District Judge, July 7, 2005.